FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

99 NOV 10 PM 2: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

CYNDEE and PAUL WOOD,        )
                             )
        Plaintiffs,          )
                             )
v.                           )        CV-98-P-1523-W        ENTERED
                             )
THE COUNTY OF BIBB,          )                              NOV 10 1999
ALABAMA, et al.,             )
                             )
        Defendants.          )

## Opinion

Before the Court is a Motion for Summary Judgment filed on June 21, 1999 by Defendants George Fleming and Arthur Harris. For the reasons expressed below, the Motion for Summary Judgment is granted in part and denied in part.

## Facts

On March 3, 1998 at approximately 5:30 p.m., Plaintiffs Cyndee and Paul Wood were incarcerated in the Bibb County Jail after being arrested on various charges. Mr. and Ms. Wood remained incarcerated in the Bibb County Jail as pre-trial detainees for 73 and 64 hours, respectively. During their period of confinement, Plaintiffs allege that they were subjected to numerous unconstitutional jail conditions. Among other things, Plaintiffs allege the following: that Ms. Wood was denied her doctor-prescribed anti-anxiety medication; that they were deprived of sheets, blankets and pillows on a night when there was no heat in the jail; that they were denied basic sanitation needs in that they were forced to stay in odiferous cells with toilets that would not flush or overflowed with feces and urine and were forced to drink out of unsanitary sinks; that they were not provided with basic hygiene products, including toilet paper, soap, and toothpaste; that the food provided Plaintiffs during their incarceration did not meet basic dietary and nutritional needs; that Mr. Wood was denied bond, despite attempts by a friend to post bond for his release; and that the jail was overpopulated and the design and physical plant of the jail has fallen below clearly established constitutional standards with respect to life safety issues, including adequate temperature control and ventilation, emergency exits, and fire apparatus.

On June 12, 1998, Plaintiffs commenced this action seeking declaratory and injunctive relief, compensatory, and punitive damages against the Defendants on the basis that the above alleged conditions of the Bibb County Jail deprived them of their rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Plaintiffs also brought claims against Defendants for failure to train and/or supervise Bibb County Jail Officers. On May 18, 1999, the Court issued an Order dismissing Plaintiffs' claims against Bibb County. The only remaining claims

are those against Sheriff Fleming and Chief Jailer Harris in their official and individual capacities, based on alleged violations of Plaintiffs' Fourteenth Amendment rights. On June 21, 1999, Defendants Fleming and Harris filed a Motion for Summary Judgment seeking to dismiss all of Plaintiffs' remaining claims.[1]

## Claims

1.   Conditions of Confinement Claims

      A. De Minimis Level of Imposition for Constitutional Claims

        Plaintiffs cannot establish that most of the Bibb County Jail conditions complained of in this cause of action violated their constitutional rights due to the very short length of time that they were incarcerated. The United States Supreme Court has recognized that "[t]here is, of course, a de minimis level of imposition with which the Constitution is concerned." *Ingraham v. Wright,* 430 U.S. 651, 674 (1977). More specifically, the Supreme Court has found that the effect that prison conditions have on constitutional rights can be directly related to the amount of time that a prisoner is subjected to those conditions. *See Hutto v. Finney,* 98 S. Ct. 2565, 2571 (1978). In *Hutto,* the Court explained that "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Id.* Courts have applied the Supreme Court's de minimis standard repeatedly in dealing with conditions of confinement claims for pretrial detainees. *See Tesch v. County of Green Lake,* 157 F.3d 465 (7th Cir. 1998)(holding that a pretrial detainee's constitutional rights were not violated because he was only incarcerated for two days, despite the fact that he was confined to a wheel chair and was refused assistance in showering and using the restroom, was forced to sleep on the floor, and was not able to change clothes); *Smith v. Copeland,* 87 F.3d 265, 268-69 (8th Cir. 1996)(holding that forcing a pretrial detainee to endure raw sewage in his cell for four days amounted to a "de minimis imposition and thus [did] not implicate constitutional concerns."); *Holloway v. Gunnell,* 685 F.2d 150, 156 (5th Cir. 1982)(holding that an inmate did not state a constitutional violation for being housed in an unsanitary, hot cell and being denied water in his cell and use of showers because he was only incarcerated for two days).

        In the present case, Cyndee Wood was in the Bibb Co. facility for approximately 64 hours; Paul Wood was there for approximately 73 hours. Each of the Plaintiffs spent only three nights in the jail. The conditions about which Plaintiffs complain include the following: the denial of medication, denial of heat, failure to provide linens and toilet paper, unsanitary sinks, inadequate food, faulty wiring, overcrowded cells, poor plumbing, and inadequate fire protection. With the exception of Cyndee Wood's denial of medication, the alleged constitutional violations relating to the

---

[1]On August 12, 1999, Defendants filed a number of motions relating to its prior-filed summary judgment motion, including the following: 1.) Defendant's Motion to Strike Certain Evidentiary Materials Submitted by Plaintiffs; 2.) Motion to Strike Affidavit of Mario Driver; 3.) Motion to Strike Correspondence from Plaintiffs' Counsel. Because this Court does not find that the materials challenged in these motions were instrumental in reaching conclusions regarding the motion for summary judgment, the motions are hereby deemed moot.

conditions complained of are de minimis due to the short length of Plaintiffs' stay in the Bibb County Jail, and summary judgment is therefore appropriate. *See Hutto*, 98 S. Ct. at 2571. The denial by jail officials of Cyndee Wood's psychological medication, on the other hand, could possibly constitute a constitutional violation, despite the short period of time that Mrs. Wood was incarcerated. The nature of somatic problems of psychological origin, in and of itself, suggests that denial of medication for even short periods of time can have effects that are long term. As such, Ms. Wood's claim based upon the denial of her prescription medication goes beyond the de minimis level of imposition with which the Constitution is not concerned. Therefore, summary judgment on Plaintiff Cyndee Wood's medication claim is not warranted based upon any de minimis argument.

### B.  Legal Standards for Establishing Conditions of Confinement Claims[2]

Even assuming that Plaintiffs' claims could survive the de minimis inquiry, most of Plaintiffs' claims about the conditions of the Bibb County Jail still fail because the Plaintiffs cannot meet the standard for liability in this case. The standard for liability with respect to pre-trial detainees under the Fourteenth Amendment is the same as the standard applied to convicted inmates, the Eighth Amendment prohibition against cruel and unusual punishment. *Jordan v. Doe*, 38 F.3d 1559, 1564-65 (11th Cir. 1994). In order to establish a conditions of confinement claim under either the Eighth or the Fourteenth Amendment, the Plaintiffs must establish the following: (1) a condition of confinement that inflicted unnecessary pain or suffering; (2) "deliberate indifference" by the Defendants to that condition; and (3) causation. *Id.*

Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under this inquiry, Prison conditions amount to cruel and unusual punishment when they result in an "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Thus, jail officials have a duty to furnish prisoners with "reasonably adequate" food, clothing, shelter, and sanitation. *Id.* at 349. However, the Constitution does not require that prisons be comfortable or that "prisoners be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." *See id.*; *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977), *reversed in part on other grounds*, 438 U.S. 781 (1978).

Whether jail officials were deliberately indifferent to conditions of confinement that inflicted unnecessary pain or suffering is a subjective inquiry. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Following this test, a defendant must have "knowingly or recklessly disregard[ed] an inmate's basic needs" to be found to have been deliberately indifferent. *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993). Not only must a jail official know of and disregard an excessive risk to inmate health or safety, the official "must both be aware of facts from which the inference could be drawn

---

[2]The section of the Prison Litigation Reform Act (PLRA) which provides that no Federal civil action may be brought by a prisoner confined in a jail for mental or emotional injury suffered without a prior showing of physical injury is inapplicable to the case at bar. *See* 42 U.S.C. § 1997e(e). Section 1997(e) applies only to prisoners who are incarcerated at the time they seek relief, not to former prisoners who seek damages for injuries suffered during their incarceration. *See Harris v. Garner*, 1999 WL 777308 (11th Cir. Sept. 30, 1999).

that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 114 S. Ct. 1970, 1979 (1994). As the Eleventh Circuit has described it, no liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).

In the present case, Defendants are entitled to summary judgment on all but Cyndee Wood's denial of medication claim because Plaintiffs cannot satisfy both prongs of the conditions of confinement test with respect to the conditions about which they complain:

### 1.    Bedlinens, Towels, and Various Hygiene Items

Plaintiffs claim that they were not provided bed linens, towels, and hygiene items during their stay in the Bibb County Jail. However, the Plaintiffs both testified that they received these items from friends within twenty-four hours of their confinement. Being deprived of these items for such a short period of time does not rise to the level of a serious deprivation. Furthermore, it is the policy of the jail to provide inmates with toiletries, pillows, pillowcases, sheets, and blankets. Even assuming that Plaintiffs did not receive these items during their three day incarceration period, there are no allegations nor is there any evidence which suggests that Sheriff Fleming or Chief Jailer Harris was informed of or made aware of this situation. As such, Defendants are entitled to summary judgment with respect to these claims by Plaintiffs because there is no evidence that Chief Jailer Harris or Sheriff Fleming were deliberately indifferent to a condition that inflicted unnecessary pain or suffering on the Plaintiffs. *See LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

### 2.    Unsanitary Conditions in General

Plaintiffs have also raised allegations that the general unsanitary condition of the cells themselves resulted in a serious deprivation of their constitutional rights. Specifically, Plaintiffs complain that the sinks were unsanitary and did not work properly and that the toilets would not flush, were odiferous, and often overflowed. Even assuming that Plaintiff's allegations are true, Plaintiffs' constitutional rights have not been violated by these alleged conditions. Aside from the fact that the short length of their stay in the cells forecloses the possibility that a serious deprivation of basic human needs has occurred, there is no evidence in this case that Chief Jailer Harris or Sheriff Fleming knowingly or recklessly disregarded these basic needs. *See LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993). It is the jail's policy that inmates clean their own cells. Trusties are supposed to deliver cleaning products, including disinfectants, to the inmates every morning. Jailers then check to ensure that cleaning was completed properly. If this policy was not followed during the three days of Woods' incarceration, there is no evidence that Chief Jailer Harris or Sheriff Fleming was so informed. Furthermore, less than one month before the Plaintiffs were incarcerated in the Bibb County Jail, Sheriff Fleming and Chief Jailer Harris retained James Black, an independent expert in jail management, to inspect the jail and inform them of any problems. Black found the jail to be clean and sanitary, with each cell having a working sink and toilet. Black reached similar conclusions when he returned for another inspection the month following Plaintiffs' release. The only evidence which might lead to an inference that Chief Jailer Harris or Sheriff Fleming knew about the alleged conditions of Plaintiffs' cells during this three day period is a grand jury report dated March 6, 1998 which refers to unsanitary cell conditions. Nevertheless, upon hearing of this report, Chief Jailer

Harris contacted the grand jury foreman, who informed him that he did not see and the grand jury report did not refer to unsanitary sinks and commodes in individual cells. Because there is no evidence that the Defendants knew about these alleged conditions, summary judgment is appropriate with respect to these allegations.

3. Food Preparation and Minimal Nutritional Needs

Plaintiffs also claim that the food served in the Bibb County Jail was inadequate. Yet, it is undisputed that neither of the Plaintiffs ate their food. Instead, the evidence suggests that the Plaintiffs traded their food to trusties in exchange for the trusties transporting letters back and forth to one another. As such, Plaintiffs have no basis to claim that the food served resulted in a serious deprivation of their basic human needs. Furthermore, the Constitution only requires that food be "reasonably adequate" and contain "sufficient nutritional value to preserve health." *Hamm v. DeKalb Co.*, 774 F.2d 1567, 1575 (11th Cir. 1985). There is no evidence in the record to suggest that the food provided to the Plaintiffs in the Bibb Co. Jail did not meet nutritional standards or that the Plaintiffs would have personal knowledge if it did not. Therefore, summary judgment is appropriate with respect to Plaintiffs' food claims.

4. Faulty Wiring, Heating, and Safety Devices

Plaintiffs also raise allegations that the Jail had fallen below clearly established constitutional standards with respect to life safety issues, including adequate temperature control and ventilation, fire apparatus and safety, emergency exits, and overpopulation. It is undisputed that the heating system in the jail went out for at least one day during the period of Plaintiffs' incarceration. However, even assuming that the lack of heat in the jail caused an "unquestioned and serious deprivation of Plaintiffs' basic human needs," Plaintiffs cannot show that the deprivation occurred based upon Defendants' deliberate indifference. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). When the heating system failed, Chief Jailer Harris and Sheriff Fleming did not ignore the problem. Rather, they called someone in to repair the system almost immediately. Furthermore, an entirely new heating system has since been installed. Therefore, summary judgment is due to be granted on Plaintiffs' claims relating to the failure of the heating system while they were incarcerated.

Plaintiffs' claims concerning faulty wiring, fire protection devices, and overcrowded conditions are also not compensable. Plaintiffs have not presented any evidence that fire escapes were not accessible, that smoke alarms and detectors were inoperable, or that the wiring was unsafe during the period of their incarceration. The fire alarm system in the jail consists of a fire alarm and a smoke detector in each cell, 5 smoke detectors on the first floor, 3 extinguishers on the first floor, 2 extinguishers on the second floor, one extinguisher on the third floor, and an automatic extinguisher in the kitchen. The entire fire alarm system is serviced at least quarterly. Plaintiffs have also raised claims concerning overcrowding of the Bibb County Jail. Yet, the undisputed evidence shows that the greatest number of prisoners in the jail during the three days of Plaintiffs' incarceration was 49. The jail capacity at the time was 69. Because Plaintiffs have not presented any evidence of problems with fire safety and overcrowding during the period of their stay in the Bibb Co. Jail or any evidence that the alleged conditions inflicted upon them unnecessary pain and suffering, summary judgment is appropriate with respect to these claims.

5.    Failure to Provide Cyndee Wood with Anxiety Medicine

Unlike the aforementioned conditions of the Bibb County Jail, the alleged failure of Defendants to provide Cyndee Wood with her medication could possibly have resulted in a serious deprivation of her basic human needs. The Eleventh Circuit has recognized that psychiatric needs can constitute serious medical needs and that deprivation of those needs can satisfy the objective prong of the prison condition inquiry. *See Steele v. Shah*, 87 F.3d 1266, 1269 (11th Cir. 1996). As the United States Supreme Court has said, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Plaintiff has also made sufficient allegations to create a factual dispute as to whether Defendants were deliberately indifferent to Cyndee Wood's serious medical needs. It is undisputed that prior to being booked into the Bibb County Jail that Cyndee Wood had been diagnosed and treated for anxiety attacks by Bibb Medical Center Physicians. Ms. Wood filled out a "Medical Receiving Screening Form" when first booked at the jail which notified authorities that she suffered from "asthma," "fainting spells," "high blood pressure," and a "psychiatric disorder." Yet, the jailer who filled out the form did not write in any answers to the question: "Do you currently take any medication prescribed by a doctor?" Furthermore, the Jail Medication Log reflects that a prescription medicine for Ms. Wood was logged in. The Eleventh Circuit has recognized that whether defendants have the requisite knowledge of Plaintiffs' medical needs is a "question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Lancaster v. Monroe County*, 116 F.3d 1419, 1426 (11th Cir. 1996). Considering Ms. Wood's allegation that she beat on her cell door asking the jailers to bring her medicine and the fact that a friend of hers telephoned and later visited the jail demanding that Ms. Wood receive her medication, an issue of fact exists as to whether Defendants were deliberately indifferent to her medical needs.[3] This is especially true considering the fact that Chief Harris testified that he talks with Sheriff Fleming on a daily basis regarding such day to day operations as sick inmates.

B.    Unconstitutional Detention and Interference with Bail Claim

Paul Wood claims that his constitutional rights were violated when Sheriff Fleming allegedly refused to allow Ronald Wright to bond him out of jail, despite the fact that bond had been set. Specifically, Plaintiff alleges that Sheriff Fleming spoke with Ronald Wright and refused to disclose an accurate bond amount. The undisputed evidence shows that Mr. Wood was released around 6:30 p.m. on March 6, 1998. Even assuming Plaintiff's allegations to be true that Mr. Wright had attempted to bond Plaintiff out at 10:30 a.m. on that same day, no serious deprivation could have occurred in such a short period of time. As such, Defendants are entitled to summary judgment on Plaintiff's bail claim.

_____

[3]It is undisputed that Plaintiff received medication subsequent to the demands made by her friend, Gerry Arvizu. However, there is a factual dispute how many pills Ms. Wood actually received over the duration of her incarceration. Contrary to jail policy, the Bibb Co. Jail does not have a nurse or health care professional on staff.

C.    Failure to Train/ Supervise Claims

Plaintiffs have also alleged that Defendants failed to properly or adequately train and/or supervise Bibb County Jail officers and that this failure has violated their Fourteenth Amendment rights. In support of this claim, Plaintiffs rely on allegations that a number of policies contained in the jail's written "Policy and Procedure Directives" were not followed during the period of their incarceration. Specifically, Plaintiffs argue that policies relating to prescription medicine were not followed, that there was no nurse on staff, that there was no "registered dietitian" on staff, that Ms. Wood's incarceration was not supervised solely by female staff, and that there has been no disciplinary action taken against the Defendants for violations of these policies. Plaintiffs' allegations are not sufficient to validate a claim for failure of Defendants to properly train their employees. The jailers attend a two-week course in jail management and attend various seminars during their employment. The jail also maintains a training video library. Plaintiffs have alleged no facts that suggest that these measures are inadequate or that any of the aforementioned failures to follow jail policy were caused by Defendants' failure to properly train its employees.

In so much as it relates to Cyndee Wood's alleged failure to receive her medication and the failure to have adequate staffing in that regard, Plaintiffs claims for failure to supervise Bibb County Jail Officers may be consumed in Plaintiffs' only remaining condition of confinement claim for denial of medical treatment.

D.    Claims for Injunctive Relief

In addition to their claims for compensatory and punitive damages, Plaintiffs seek injunctive relief in the form of an Order requiring the closure of the Bibb County Jail for such time as is necessary for a neutral expert or special master to inspect the Jail. Plaintiffs ask that this expert then provide the Court with a written report detailing the degree to which the Bibb County Jail fails to comply with minimum Constitutional, Federal and State regulatory standards of sanitation, heating, cooling, ventilation, lighting, plumbing, wiring, occupancy, prisoner treatment, and general facilities conditions. Furthermore, Plaintiffs seek an Order requiring Defendants to take whatever action is recommended in such a report- including permanent closure of the Bibb County Jail, if recommended - to bring the jail into constitutional compliance.

This Court's jurisdiction over Plaintiffs' claims for injunctive relief depends upon the existence of a live "case or controversy," as this Court has no authority to decide questions that cannot affect the rights of the litigants in this case. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983); *see also DeFunis v. Odegaard,* 416 U.S. 312, 316 (1974). In the present case, Plaintiffs were released from the Bibb County Jail on March 6, 1998. When they were released from jail, any question of the constitutionality of the conditions of the jail ceased to affect Plaintiffs' rights, which are the only rights at issue in this action. Therefore, Plaintiffs' claims for injunctive relief can only be considered by this Court if Plaintiffs fall within the judicially recognized exception to the general rule for cases that are "capable of repetition, yet evading review." *Murphy v. Hunt,* 455 U.S. 478, 482 (1982). In the absence of a class action, this doctrine is limited to situations where (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and (2) there is a

reasonable expectation that the same complaining party will be subjected to the action again. *Id.*

The "capable of repetition, yet evading review" doctrine is inapplicable in the present case because the duration of the challenged conduct is not too brief to ever be fully litigated prior to its cessation. There are a number of Plaintiffs currently incarcerated in the Bibb County Jail which are capable of litigating claims similar to the ones which Plaintiffs are pursuing in this action. Plaintiffs argue that the uncertainty surrounding their sentencing and the possibility of probation violations might require them to return to the Bibb County Jail and to again be subjected to the unconstitutional conditions about which they complain.[4] Yet, Plaintiffs cannot establish that they have a "reasonable expectation" that they will again be subjected to these same constitutional violations. Even if one of the Plaintiffs was to end up incarcerated in Bibb County Jail again, most, if not all, of the prison conditions that they have complained about in this action have been redressed. Since Plaintiffs were released in March of 1998, Defendants have installed a completely new heating system, repaired the electrical system, renovated cells, repaired commodes and sinks, replaced pipes, repaired leaks, replaced wiring, installed fly and insect control lights, and painted. Furthermore, the jail has received good scores on its State Health Department Inspection Reports since the release of the Plaintiffs. Because the Plaintiffs in this case lack a legally cognizable interest in the outcome of the relief sought, their claims for injunctive relief are moot, and summary judgment is appropriate.

E.     Immunity Issues

Defendants Fleming and Harris are entitled to Eleventh Amendment immunity as to claims for monetary damages against them in their official capacities. The Eleventh Circuit has acknowledged that both sheriffs and jailers act as officers of the State of Alabama, thereby making prosecution of claims against them in their official capacity an imposition of liability on the State of Alabama. *See Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (1997). With respect to qualified immunity for Plaintiff Cyndee Wood's claim against Defendants in their individual capacities for denying her serious medical needs, a question of fact exists as to whether Defendants had knowledge of Plaintiff's condition and a substantial risk of harm relating thereto.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted, except with respect to Plaintiff Cyndee Wood's claim relating to the denial of her prescription medication.

---

[4]Cyndee Wood has been charged with a misdemeanor. Paul Wood has been charged with a felony. Sentencing is reportedly scheduled for November 19, 1999.

Dated: _____ $N$ ov, $10$ _____, 1999

_____
Chief Judge Sam C. Pointer, Jr.

Service List:

      Richard R. Newton
      Kendrick E. Webb
      Robbie A. Hyde
      George E. Jones, III